## Crawford v. Sasser et al.

(Decided April 28, 1931.)

C. R. LUKER for appellant.

RAY C. LEWIS for appellees.

Opinion of the Court by Creal, Commissioner— Affirming.

In the year 1886, T. G. Crawford and wife conveyed to their son, W. H. Crawford, two tracts of land in Laurel county which adjoined and constituted one farm of about 200 acres. Soon after the deeds were made to W. H. Crawford, he and his wife, Manila Crawford, moved upon the land and lived there with his father and mother. A short time thereafter, T. G. Crawford died and W. H. Crawford, with his wife and mother, continued to live upon the farm until about the 1st of May, 1888, when he

became involved in a homicide case, and a charge of murder was placed against him. He was arrested, but broke jail, escaped from the state and did not return until about the 27th day of March, 1920.

In April, 1889, Marshall Smith, the father-in-law of W. H. Crawford, filed a suit in the Laurel circuit court against Rachael Crawford and one Henry Hammonds, in which he sought to eject them from the lands hereinbefore referred to, alleging that same had been conveyed to him by W. H. Crawford and Manila Crawford, his wife, and by Rachael Crawford. A copy of the deed under which he claimed title is in the record and is signed by all of the grantors by mark and is acknowledged, as appears from a certificate thereon, before T. J. Russell, a deputy clerk of Laurel county.

In her answer, Rachael Crawford denied that she signed or acknowledged the deed, and set up other defenses which called in question the effect of the deeds made by herself and husband to W. H. Crawford. While it is not necessary to go into a detailed statement as to the suit, we think it sufficient to say that Mrs. Crawford prevailed, and, under the judgment of the court, retained possession of the lands until her death. The date of the death of Mrs. Rachael Crawford is not shown with any certainty, but it appears that some 8 or 10 years prior to the year 1909, Marshall Smith acquired possession of the two tracts of land claimed by W. H. Crawford.

On March 3, 1909, Marshall Smith conveyed to Abe Sasser the boundary of land which is in controversy in this suit. A short time thereafter Sasser put this deed to record, rented the farm out to tenants, and went to the state of Indiana, where he remained for about 18 or 19 months, when he returned to this state and took up his residence on the tract conveyed to him by Marshall Smith.

In 1920, W. H. Crawford returned to Laurel county and instituted a suit against Abe Sasser seeking to recover the tract of land which is now in controversy. The issues in that suit were completed, and some proof had been taken when on motion of Crawford's attorney it was dismissed without prejudice.

It appears that during the pendency of this action, the old indictment against Crawford was reinstated, and he again fled the state and remained away for a number of years, but finally returned and stood trial on the indictment. The trial resulted in his acquittal.

This litigation was initiated on January 26, 1928, when appellant and plaintiff below filed his petition in the Laurel circuit court against Abe Sasser, appellee, and against A. P. Smith and Taylor Sasser, alleging that he was the owner of and entitled to the possession of two tracts of land containing about 200 acres, and that defendants were jointly and severally holding possession of all of said lands.

The three defendants filed separate answers in which they asserted ownership in themselves of different portions of the lands claimed by the plaintiff. The action as to A. P. Smith and Taylor Sasser was later dismissed. Abe Sasser by his separate answer and counterclaim first traversed the allegation of the petition, and by a second paragraph asserted that he held the legal title to the boundary of land therein described and which is now in controversy, and that he had adversely held and claimed same continuously for more than 15 years next before the initiation of the suit, pleading the 15-year statute of limitations (Ky. Stats., sec. 2505) as a bar to plaintiff's right of recovery, and, further, that plaintiff's claim of ownership of the land was a cloud upon his title.

The lower court dismissed the petition and adjudged Abe Sasser to be the owner of the land claimed by him and described in his answer and counterclaim, and further adjudged that his title thereto be quieted against the claim of the plaintiff.

Much of the brief of appellant's counsel is devoted to an argument that the deed from appellant and his wife and mother to Marshall Smith is a forgery, and there is considerable evidence upon which to base such an argument, but there is substantial evidence pointing the other way, and, in view of this conflict, this court would hesitate to disturb the finding of the chancellor, even if it were based entirely upon the validity of Smith's deed.

Where one sought to be ejected from lands invokes the statute of limitations and shows an entry and adverse holding for a time sufficient to acquire title, the question as to whether the entry was with or without claim of right or color of title is only important in determining the limits or boundary to which the adverse holding will extend. Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629, and cases therein cited.

Appellee testified that after he purchased this land on March 3, 1909, he let it out to tenants for about 18 months and then moved upon the land with his family

and has, since that time, continuously occupied it as a home, claiming ownership to the full extent of the boundary set out in his answer and counter-claim; that he has cultivated all the land except some woodland and during his occupancy the entire boundary has been inclosed by fencing; that since his purchase of the land, he has listed it for taxation and paid the taxes. In this he is corroborated by a number of his own witnesses as well as by some introduced by appellant.

The evidence clearly shows that appellee was in possession of this land for more than 15 years next before this action was instituted, and, if that possession was actual, open, notorious, continued, exclusive, and adverse it ripened into title. There is such unanimity of authority on this question as to render citation unnecessary.

It is earnestly urged by appellant's attorney that appellant did not acquiesce in or have knowledge of appellee's possession of the land in controversy, and therefore such possession did not ripen into title. In support of this argument, the case of George T. Stagg v. Frankfort Modes Glass Works, 175 Ky. 330, 194 S. W. 333, 336, is cited.. That case does refer to the well-recognized doctrine that acquisition of the title by adverse possession is founded upon the principle of acquiescence of the true owner in the possession of the adverse claimant, but after adverting to that doctrine the opinion says:

"This knowledge may be either actual or presumed, but if not actual the circumstances must be such as to make it clear that the one upon whom notice is sought to be fastened must, in the very nature of things, have known the facts. Hence, it is stated in 2 Corpus Juris, 75, that: 'In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally and with the purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault.''

The possession of appellee was so open, visible, and notorious as to bring notice to all the world, including appellant, of the hostile nature of appellee's claim and

holding, and imposed the duty to speak or to suffer imputed acquiescence by silence.

Appellant's ejectment suit against appellee in 1920, which was dismissed without prejudice, did not lead to any change of possession and did not operate to break the continuity of appellee's possession or stop the running of the statute. 1 R. C. L. 725; Workman v. Guthrie, 29 Pa. 495, 72 Am. Dec. 654.

Appellee has by proof sustained his plea of adverse holding, and the judgment of the lower court properly dismissed the petition and quieted appellee's title.

Judgment affirmed.